J-S04019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1640 EDA 2021 |

Appeal from the Order Entered July 27, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at CP-51-DP-0000643-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.L.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1641 EDA 2021 |

Appeal from the Decree Entered July 27, 2021
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000214-2021

BEFORE:   BENDER, P.J.E., MURRAY, J., and STEVENS, P.J.E.*

MEMORANDUM BY MURRAY, J.:                    **FILED APRIL 11, 2022**

L.S. (Father) appeals from the decree involuntarily terminating his parental rights to his daughter, S.S. (Child), a minor born in March 2011, and the order changing Child's permanency goal from reunification to adoption.  In

---

* Former Justice specially assigned to the Superior Court.

addition, Father's counsel (Counsel) has filed a petition to withdraw and brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). After review, we grant the petition to withdraw, affirm the termination decree, and dismiss the appeal from the goal change order as moot.

In early 2019, Father was incarcerated and Child, then age seven, was living with C.D. (Mother). N.T., 7/27/21, at 11. Mother was struggling with heroin addiction and Child was missing a significant amount of school. *See id.* On April 22, 2019, the Department of Human Services of Philadelphia (DHS) obtained emergency custody of Child and placed her with Mother's sister (Maternal Aunt) as a kinship care provider.

In April 2019, DHS filed a petition seeking to adjudicate Child dependent. That same month, DHS set the following objectives for Father: ensure Child's educational and medical needs are met; address drug and alcohol issues; visit with Child in prison; attend services through the Achieving Reunification Center (ARC); and remain in contact with the Community Umbrella Agency (CUA) assigned to his case. N.T., 7/27/21, at 17.

On June 30, 2019, the trial court adjudicated Child dependent pursuant to subsection 6301(1) and (5) of the Juvenile Act, 42 Pa.C.S.A. § 6301(1) and (5). Father was still incarcerated at the time. *See* N.T., 7/27/21, at 12, 17.

Child remained in kinship care with Maternal Aunt. On April 19, 2021, DHS filed a petition to involuntarily terminate Father's parental rights. DHS

also requested Child's permanency goal be changed from reunification to adoption. The court conducted a hearing on July 27, 2021. Although DHS served Father with notice, Father did not appear. N.T., 7/27/21, at 7-11, 25. Father was represented by court-appointed counsel. Child, who was then 10 years old, was represented by Neil Masciantonio, Esquire.[1] DHS presented the only witness, Nakeisha Evans, who was the family's CUA case manager.

_____

[1] Initially, Attorney Masciantonio's role was unclear. The record contains an order in Child's dependency docket appointing Attorney Masciantonio to represent Child's "interests," with boxes checked for guardian *ad litem* (GAL) "and/or counsel." Order of Appointment (Docket Number CP-51-DP-0000643-2019), 4/22/2019, at 1. This order only listed the dependency docket number. Although it referenced Attorney Masciantonio representing Child in termination matters, the order was not entered on the orphans' court docket, was not contemporaneous to the termination matter, and did not indicate whether the court made a conflict determination for purposes of a contested termination pursuant to 23 Pa.C.S.A. § 2313(a) and **In re Adoption of K.M.G.**, 240 A.3d 1218 (Pa. 2020).

Failure to appoint legal counsel for a child in contested termination is a structural error that is not subject to harmless error analysis and is non-waivable. **K.M.G.**, 240 A.3d at 1235 (citing **In re T.S.**, 192 A.3d 1080, 1082 (Pa. 2018) and **In re L.B.M.**, 161 A.3d 172, 183 (Pa. 2017)). Our Supreme Court has explicitly directed this Court to verify *sua sponte* the court's compliance with its statutory obligation*.* **K.M.G.**, 240 A.3d at 1235-36. Specifically, the Supreme Court has tasked this Court with evaluating "(1) whether the orphans' court appointed counsel to represent the legal interests of the children, and (2) if the appointed counsel also serves as GAL, whether the orphans' court determined that the child's best interests and legal interests did not conflict." **Id.** at 1236. The orphans' court must make its determination **prior to** appointment. **Id.**

By order of February 25, 2022, this Court directed the trial court to supplement the record with clarification as to whether the court had appointed Attorney Masciantonio to represent Child's legal interests in the TPR matter and whether it had complied with the conflict-determination requirements of
*(Footnote Continued Next Page)*

At the conclusion of the hearing, the court announced its determination that DHS met its burden of proof pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b). N.T., 7/27/21, at 25-26. By decree dated July 27, 2021, the court involuntarily terminated Father's parental rights.[2] It also entered an order changing Child's permanency goal from reunification to adoption.

Father timely filed separate notices of appeal from the decree and order, with concurrent statements of matters complained of on appeal. The court filed an opinion explaining its reasoning pursuant to Pa.R.A.P. 1925(a). This

_____

***K.M.G.*** The trial court supplemented the record with a letter indicating it had deemed Attorney Masciantonio's appointment to "carry over" from his appointment in Child's dependency, and had permitted Attorney Masciantonio to represent Child's legal and best interests in the TPR proceeding because the interests were not in conflict. ***See*** Trial Court's Response to Order, 3/22/22, at 1.

While "[t]ermination proceedings often occur simultaneously with dependency proceedings, . . . these two types of proceedings remain distinct, with their own docket numbers, records, and divisions within the Court of Common Pleas." ***Interest of S.S.***, 252 A.3d 681, 688 (Pa. Super. 2021). Nonetheless, we follow the Supreme Court's example of not elevating form over substance. ***See In re T.S.***, 192 A.3d at 1090 n.19 (where orphans' court failed to formalize appointment of child's dependency lawyer in the TPR matter, but lawyer represented the child's best and legal interests without conflict, the Court would not deem the lack of formal appointment as deprivation of child's right to counsel). However, we emphasize it "would be a better practice for the [orphans'] court to place an order on the record formalizing the GAL's role for termination purposes." ***In re T.S.***, 192 A.3d at 1090 n.19. We stress that trial courts must create a record of conflict determinations and appointments to avoid delays and remands in these cases.

[2] The court also terminated the parental rights of Mother, who has not appealed or participated in Father's appeal.

- 4 -

Court *sua sponte* consolidated the cases for review. Counsel then filed a petition to withdraw and **Anders** brief in this Court.

We begin by addressing Counsel's petition to withdraw and **Anders** brief. **See Commonwealth v. Rojas**, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported **Anders** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (**quoting Commonwealth v. Smith**, 700 A.2d 1301, 1303 (Pa. Super. 1997)); **see also In re V.E.**, 611 A.2d 1267 (Pa. Super. 1992) (extending **Anders** procedure to appeals from involuntary termination decrees).

To withdraw pursuant to **Anders**, counsel must:

1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (**citing Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)).

With respect to the third requirement of **Anders**, that counsel inform the appellant of his rights in light of counsel's withdrawal, this Court has held counsel must "attach to their petition to withdraw a copy of the letter sent to

- 5 -

their client advising him or her of their rights." ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, the Pennsylvania Supreme Court has directed that ***Anders*** briefs must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Here, Counsel avers in his petition that after conducting a thorough and conscientious examination of the record, he has determined Father's appeal is frivolous.[3] Counsel avers he mailed Father a letter explaining his rights and has attached a copy of the letter to his petition to withdraw and ***Anders*** brief. Counsel's letter complies with the law, as it informs Father that he may retain new counsel or proceed *pro se* and raise any additional arguments he deems worthy of our attention. Counsel's ***Anders*** brief summarizes the facts and procedural history, includes issues that could arguably support Father's appeal, and Counsel's assessment of why the issues are frivolous, with

---

[3] While the petition's certificate of service does not name Father, he appears on the certificate of service for the ***Anders*** brief, and Counsel averred that he sent the ***Anders*** brief to Father. Petition to Withdraw, at ¶ 6. As Counsel attached the petition to the ***Anders*** brief, we are satisfied Father received it.

citations to the record and relevant legal authority. As Counsel has complied substantially with *Anders*, we review the issue presented in his brief. We also "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015); *see also Commonwealth v. Dempster*, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) (describing our duty as a "simple review of the record to ascertain if there appears . . . to be arguably meritorious issues that counsel, intentionally or not, missed or misstated").

Counsel's *Anders* brief identifies the following issues:

1. Did the trial court err as a matter of law or abused [*sic*] its discretion where it determined that the requirements of 23 Pa.C.S.A. § 2511(a) to terminate [Father's] parental rights were met.

2. Did the trial court err as a matter of law or abused [*sic*] its discretion where it determined the requirements of 23 Pa.C.S.A. § 2511(b) were met.

3. Did the trial court err as a matter of law or abused [*sic*] its discretion where it determined that the permanency goal for A.S. [*sic*] should be changed to adoption.

*Anders* Brief at 3 (re-numbered, with first issue and suggested answers omitted).[4]

---

[4] The omitted issue relates to counsel's compliance with *Anders* and *Santiago*, which we already addressed.

We review Father's first two issues mindful of our well-settled standard of review. "In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence." ***In re Adoption of C.M.***, 255 A.3d 343, 358 (Pa. 2021). When applying this standard, appellate courts must accept the trial court's findings of fact and credibility determinations if they are supported by the record. ***Interest of S.K.L.R.***, 256 A.3d 1108, 1123 (Pa. 2021). "Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion." ***In re Adoption of L.A.K.***, 265 A.3d 580, 591 (Pa. 2021). "[A]n abuse of discretion does not result merely because the reviewing court might have reached a different conclusion" or "the facts could support an opposite result." ***In re Adoption of S.P.***, 47 A.3d 817, 826-27 (Pa. 2012). Rather, this Court may reverse for an abuse of discretion "only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." ***Id.*** at 826. This standard of review reflects the deference we pay to trial courts, who observe the parties first-hand, and often in multiple hearings. ***S.K.L.R.***, 256 A.3d at 1123-24.

In considering a termination petition, a trial court must balance the parent's fundamental "right to make decisions concerning the care, custody, and control" of his child, with the "child's essential needs for a parent's care,

protection, and support." ***C.M.***, 255 A.3d at 358. Termination has "significant and permanent consequences for both the parent and child." ***L.A.K.***, 265 A.3d at 591. The law requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so "clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***C.M.***, 255 A.3d at 359 (***quoting Matter of Adoption of Charles E.D.M., II***, 708 A.2d 88, 91 (Pa. 1998)).

Termination is governed by Section 2511 of the Adoption Act, which requires the trial court to engage in a bifurcated process. ***In re Adoption of R.J.S.***, 901 A.2d 502, 508 (Pa. Super. 2006). The initial focus is on the parent's conduct. ***Id.*** To that end, "[s]ubsection (a) provides eleven enumerated grounds describing particular conduct of a parent which would warrant involuntary termination." ***C.M.***, 255 A.3d at 359; ***see also*** 23 Pa.C.S.A. § 2511(a)(1)-(11). If the court determines the petitioner established grounds for termination under subsection 2511(a) by clear and convincing evidence, the court must assess the petition under subsection 2511(b), which addresses the child's needs and welfare. ***See In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

Instantly, the court terminated Father's parental rights pursuant to subsections 2511(a)(1) and (b), which provide:

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To prove subsection 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Adoption of B.G.S.*, 245 A.3d 700, 706-07 (Pa. Super. 2021) (citation omitted). Our Supreme Court recently explained,

> Parental duties are not defined in the Adoption Act, but our courts long have interpreted parental duties in relation to the needs of a child, such as love, protection, guidance and support. Parental duties are carried out through affirmative actions that develop and maintain the parent-child relationship. The roster of such positive actions undoubtedly includes communication and association. The performance of parental duties requires that a parent exert

- 10 -

himself to take and maintain a place of importance in the child's life.

*L.A.K.*, 265 A.3d at 592 (citations omitted).

Courts should consider the entire history of the case and avoid applying the statutory six-month requirement mechanically. *C.M.*, 255 A.3d at 364. However, the General Assembly's emphasis on the six months immediately preceding the filing of the petition indicates the timeframe is the "most critical period for evaluation" of a parent's conduct. *L.A.K.*, 265 A.3d at 592.

The question of "whether a parent has failed or refused to perform parental duties must be analyzed in relation to the particular circumstances of the case." *In re Burns*, 379 A.2d 535, 540 (Pa. 1977). If competent evidence establishes the criteria under subsection 2511(a)(1), trial courts must evaluate the totality of the circumstances, "under three lines of inquiry: (1) the parent's explanation for his or her absence; (2) the post-abandonment contact between parent and child, including a parent's efforts to re-establish contact; and (3) consideration of the effect of termination of parental rights on the child pursuant to Subsection 2511(b)." *C.M.*, 255 A.3d at 365. In evaluating the parent's explanation, the court should consider that parental rights "are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." *Id.* at 364 (citation omitted).

Here, the court determined DHS established clear and convincing evidence that Father's conduct during the six months prior to the filing of the

petition demonstrated a settled purpose of relinquishing parenting claim to Child, as well as a failure or refusal to perform parental duties. Orphans' Court Opinion, 9/21/21, at 13.

The record supports the orphans' court's findings. As the court highlights, Father was incarcerated when Child came into care and remained incarcerated until his release in September 2020. During his incarceration, Nakeisha Evans, the CUA case manager, sent Father multiple letters and spoke to him by phone. N.T., 9/21/21, at 21. Ms. Evans informed Father he needed to put Child's name on his visitor's list so DHS could arrange visitation in prison, but Father never did so. *Id.* at 22.

In October 2020, Father was out of prison and called Ms. Evans. *Id.* at 19. He has been staying in a halfway house, but did not appear for court-ordered drug assessment or screens. *Id.* at 18-20. Also, he did not comply with Ms. Evans's requests that he verify employment. *Id.* at 20. He visited with Child one time on October 13, 2020; by Ms. Evans's estimation, Father did not act like a parent, and there appeared to be no parent-child bond. *Id.* at 19, 22. The only action Father took toward his DHS objectives was to complete ARC's housing, employment, and parenting program. *Id.* at 19. Overall, Ms. Evans reported that Father's compliance was minimal. *Id.* at 20. He has not asked to parent Child, although he desires that Child live with his family. *Id.* at 23.

Based on the foregoing, we discern no error or abuse of discretion in the court's decision to terminate Father's parental rights pursuant to subsection 2511(a)(1). The pertinent six-month period began on October 28, 2020. During that time, Father had no contact with Child. He did not act to parent Child, other than completing the ARC program. While the six-month period is most crucial, it was preceded by a long period of inaction by Father, who did not even place Child on his prison visitor list. Father visited Child once the entire time she was in kinship care, and has not met her needs. Moreover, Father has not explained his abandonment, did not appear at the termination hearing, and expressed agreement with family members raising Child.

In the **Anders** brief, Counsel raises several potential arguments regarding termination under subsection 2511(a)(1), which we address *seriatim.*

Counsel acknowledges Father's incarceration during time that Child was in care. **Anders** Brief at 19-20. We agree with Counsel's assessment that Father's incarceration does not afford him relief. An incarcerated parent has a duty to utilize available resources to continue a relationship with his child; failure to do so may result in a finding that a parent abandoned the child. **See In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012) (citing **In re Adoption of McCray**, 331 A.2d 652 (Pa. 1975)). As noted, Father failed to place Child's name on his prison visitor list. Further, Father was not incarcerated during

the six-month period preceding the filing of the petition, yet he did little to parent Child. We agree with Counsel that this argument lacks merit.

Next, Counsel raises the issue of whether it matters that DHS removed Child from Mother's care, not Father's. *Anders* Brief at 19. We likewise agree with Counsel that this argument has no merit. Father was unavailable to parent Child because he was incarcerated when Child was removed from Mother's care. Moreover, subsection 2511(a)(1) focuses on Father's conduct, particularly in the six months preceding the filing of the petition, which was well after DHS removed Child from Mother's care.

Counsel also queries whether the court erred by not addressing all subsections of 2511(a) pled by DHS. *Anders* Brief at 20. This argument also fails because the orphans' court may terminate parental rights "where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010).

Finally, Counsel addresses the argument that Father did not know Child was in care. *Anders* Brief at 21. Counsel observes that this argument is not supported by the record, as DHS served Father with the dependency petition, and the juvenile court continued the hearing twice to ensure Father had proper notice before proceeding on June 20, 2019. *Id.* Further, CUA made multiple attempts to engage Father regarding his objectives for reunification. *Id.* Finally, Father attended the April 26, 2021 permanency review hearing. *Id.*

Thus, Counsel concludes any argument Father did not know that Child was in care is frivolous. We agree. More to the point, Father knew Child was in care during the six-months preceding the petition, and yet made little effort to parent.

Accordingly, we agree with Counsel that Father's appeal of termination under subsection 2511(a)(1) is frivolous. We next address subsection 2511(b). Once the trial court determines the petitioner met its burden under subsection 2511(a), it must shift focus to the child. *T.S.M.*, 71 A.3d at 267. The Adoption Act states that the court, "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b).

The "emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability." *T.S.M.*, 71 A.3d at 267 (citation omitted). Section 2511(b) requires the court to consider the nature and status of any bond between a parent and child. *In re E.M.*, 620 A.2d 481, 484-85 (Pa. 1993). Existence of a bond does not necessarily result in denial of termination. *T.S.M.*, 71 A.3d at 267. The court must examine the effect on the child. *Id*. "When examining the effect upon a child of severing a bond, courts must examine whether termination of parental rights will destroy a 'necessary and beneficial relationship,' thereby causing a child to suffer 'extreme emotional

consequences.'" ***In re Adoption of J.N.M.***, 177 A.3d 937, 944 (Pa. Super. 2017) (quoting ***E.M.***, ***supra***, at 484-85).

"While a child's emotional bond with his parent is a major aspect of the [s]ubsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." ***In re M.M.***, 106 A.3d 114, 118 (Pa. Super. 2014). "In addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." ***Id***.

Here, the court concluded there was clear and convincing evidence that termination served Child's developmental, physical, and emotional needs and welfare. Orphans' Court Opinion, 9/21/21, at 13. Counsel posits the only potential argument that Father could raise is that he had a bond with Child, but in Counsel's assessment, the argument is belied by the record. ***Anders*** Brief at 25. We agree.

Ms. Evans, the CUA case worker, testified that Child has never lived with Father. N.T., 7/27/21, at 20. Prior to being in DHS's care, Child occasionally stayed at her paternal grandfather's house while Father was living there. ***Id.*** In their one visit during Child's dependency, Father did not act like a parent toward Child, and there did not appear to be a bond. ***Id.*** at 19, 22. In Ms. Evans's opinion, Child would not suffer irreparable harm from termination. ***Id.***

at 20. In addition, Child was doing well in Maternal Aunt's care, and Maternal Aunt meets Child's emotional, physical, and educational needs. *Id.* at 16. Maternal Aunt is willing to adopt Child, and she and Child have a maternal parent-child bond. *Id.* at 15-16. Child considers Maternal Aunt's children, her cousins, to be her siblings. *Id.* at 16.

Based on this evidence, we agree with Counsel that there is no merit to a challenge based upon a parent-child bond, as the evidence indicates Child does not have a parent-child bond with Father. *See J.N.M.*, 177 A.3d at 944. The record supports the trial court's findings and conclusions, and we discern no abuse of discretion in its determination that termination serves Child's needs and welfare.

In his last issue, Counsel raises a potential challenge to the changing of Child's permanency goal to adoption. *Anders* Brief at 26-28. However, given our disposition concerning termination, this issue is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) ("An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

However, even if not moot, we would conclude there was no error or non-frivolous issue. We review the change of a placement goal for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). When considering a petition for a goal change, the court must examine 42 Pa.C.S.A. § 6351(f) of the Juvenile Act. *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008). The

court considers the best interests of the child, not the parent. ***In re A.B.***, 19 A.3d 1084, 1088-89 (Pa. Super. 2011). Accordingly, were we to reach this issue, we would not find any non-frivolous issues to support Father's appeal from the order changing Child's placement goal. Father has been absent from Child's life and put forth little effort to parent Child. In the void of Father's absence, Child has bonded with Maternal Aunt, and is safe, stable, and secure in her care. Thus, even if this issue was not moot, we would discern no abuse of discretion.

Finally, our review of the record reveals no arguably meritorious issues Father could raise on appeal. ***See Dempster***, 187 A.3d at 272. We therefore grant Counsel's petition to withdraw from representation, affirm termination pursuant to 23 Pa.C.S.A. § 2511(a)(1) and (b), and dismiss Father's appeal from the order changing Child's permanency goal.

Petition to withdraw granted. Decree affirmed. Appeal from goal change order dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2022

- 18 -